1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
2                    CENTRAL DIVISION AT LEXINGTON


3
                              - - -
4    UNITED STATES OF AMERICA,      .  Case No. 5:20-CR-00103
                                    .
5              Plaintiff,           .
                                    .  Lexington, Kentucky
6         - v -                     .
                                    .  Monday, September 27, 2021
7    VONNIE J. McDANIELS,           .  9:59 a.m.
                                    .
8              Defendant.           .
                              - - -
9
                  TRANSCRIPT OF SENTENCING PROCEEDINGS
10            BEFORE THE HONORABLE DANNY C. REEVES
                 UNITED STATES DISTRICT COURT JUDGE
11
                              - - -
12

13   For the United States:      KATE SMITH, ESQ.
                                 Assistant U.S. Attorney
14                               United States Attorney's Office
                                 260 West Vine Street, Suite 300
15                               Lexington, Kentucky  40507

16   For the Defendant:          THOMAS C. LYONS, ESQ.
                                 Thomas C. Lyons Law Offices
17                               201 West Short Street, Suite 800
                                 Lexington, Kentucky  40507
18
     Court Reporter:             LINDA S. MULLEN, RDR, CRR
19                               Official Court Reporter
                                 101 Barr Street
20                               Lexington, Kentucky  40507

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25

```
 1    (Proceedings in open court, September 27, 2021, 9:59 a.m.)
 2         THE COURT:  Thank you.
 3         Madam Clerk, would you call the matter scheduled for
 4    10:00, please.
 5         THE CLERK:  Yes, Your Honor.  Lexington Criminal Action
 6    Number 20-103, United States of America versus Vonnie J.
 7    McDaniels, called for sentencing.
 8         THE COURT:  Thank you.  Would counsel state their
 9    appearances, please.
10         Ms. Smith.
11         MS. SMITH:  Good morning, Your Honor.  Kate Smith on
12    behalf of the United States.
13         THE COURT:  Thank you.
14         And Mr. Lyons.
15         MR. LYONS:  Your Honor, please.  Thomas Lyons appearing on
16    behalf of Mr. McDaniels, who is present in the courtroom and
17    seated to my right.
18         THE COURT:  Thank you.  This matter is scheduled for a
19    sentencing hearing this morning.  Before we proceed with the
20    hearing, let me first confirm that Mr. McDaniels has had the
21    opportunity to review his presentence report and also discuss
22    his report with his attorney to his satisfaction, is that
23    correct, Mr. McDaniels?
24         THE DEFENDANT:  (Nodding head.)
25         THE COURT:  Mr. McDaniels, your presentence report will be
```

1   filed in the record under seal pursuant to Rule 32 of the

2   Federal Rules of Criminal Procedure.

3        There is one objection that I do want the parties to

4   address -- actually, two objections that are raised by the

5   defendant.

6        The first is that the defendant objects to paragraphs 27,

7   28, and 59 relating to the two-year mandatory minimum term of

8   incarceration required for conviction for Count 3.   The

9   defendant argues that the Court didn't properly overrule the

10   motion to dismiss prior to trial and wishes to reserve that

11   issue for purposes of appeal.

12        Any additional arguments the parties wish to make on that

13   point?

14        MR. LYONS:   Not on behalf of the defendant, Your Honor.   I

15   think everything we said is in the motion to dismiss and the

16   Court has ruled.

17        THE COURT:   All right.

18        Likewise, the defendant objects to paragraph 28.   I

19   believe there's been additional language that has been added to

20   that particular paragraph in response to the objection.

21        Do the parties wish to further address that issue,

22   Mr. Lyons?

23        MR. LYONS:   Just one little technical matter, Your Honor.

24        THE COURT:   Yes, sir.

25        MR. LYONS:   The additional language describes the EID

1    Loan, the Economic Injury Disaster Loan, as being applied for

2    in the name of a dissolved LLC, that is not the case.  It was

3    applied for with V&M Leawood, which was the corporation that

4    was formed -- I'm sorry, the corporation that was formed in

5    connection with the purchase of the piece of the property which

6    was the subject of the underlying loan.

7        So a slight difference of opinion about that.  I don't

8    think it affects the guideline range or any other substantive

9    matter.

10        THE COURT:  Yes, sir.  Of course the Court is not required

11    to make a ruling inasmuch as the information does not affect

12    the guideline range, but I do understand the United States'

13    position to be that false information was provided in

14    connection with that application and it may be subject to

15    further litigation subsequently; is that accurate?

16        MS. SMITH:  Yes, Your Honor, that's accurate.

17        THE COURT:  It does not affect the guideline calculations

18    in this particular matter.

19        Does the United States wish to respond further to the

20    first objection, which was to the defendant's motion to dismiss

21    and then the Court's denial of that motion pretrial?

22        MS. SMITH:  No, Your Honor.

23        THE COURT:  I have again looked at the memorandum opinion

24    that was filed in connection with that issue and this

25    objection, and I do find again that the memorandum opinion is

1    correct with regard to the factual information as well as the

2    Court's legal rulings, so I would overrule that objection and

3    note for the record that the Court's ruling does stand with

4    respect to that issue.

5         I will therefore adopt the findings that are contained in

6    the presentence report as well as the guideline calculations.

7    I will review those with the parties in just a moment.  Before

8    I do that, I'll remind counsel that if there are any additional

9    factors that you would like to call to my attention that are

10   relevant to sentencing under Title 18, Section 3553, of course

11   please do so during allocution in the case.

12        Turning to the guideline calculations, they begin at

13   page 4 of the report.  The 2018 edition of the guideline manual

14   has been used to perform these calculations.

15        As indicated in paragraph 17, the first two counts of

16   conviction, Counts 1 and 2, are grouped together.  Count 3 is

17   not grouped.  It does have the mandatory minimum statutory

18   provision.  For the two counts of conviction, the base offense

19   level is level 7.

20        Count 3 does require a term of incarceration to run

21   consecutive to that, and the mandatory minimum term is

22   24 months, and that does become the guidelines for that

23   particular count.

24        The defendant does not have any criminal history points as

25   reflected in paragraph 34, and therefore is placed in Criminal

1    History Category I for purposes of calculating his guideline

2    range.

3         The statutory provisions are outlined for incarceration in

4    paragraph 58.  Counts 1 and 2 have a maximum term of

5    imprisonment of 30 years per count.  And Count 3 is two years,

6    which would be consecutive to any penalty imposed for Counts 1

7    and 2.

8         The guideline range for Counts 1 and 2 is a range of zero

9    to six months, and then again Count 3 is 24 months consecutive.

10        For supervised release for Counts 1 and 2, the statute

11   provides not more than five years of supervision per count.

12   Count 3, however, is not more than one year.

13        The guidelines then provide for Counts 1 and 2 of

14   supervision of two to five years, and Count 3 would be one

15   year.

16        I will make one correction to paragraph 68 to the extent

17   that it may be ambiguous.  Special assessment of $100 for each

18   count, it does say mandatory per count.  There are three counts

19   of conviction for a total of $300.  And the fine range in this

20   case is a minimum of $1,000, maximum of $2 million as reflected

21   in paragraph 69.  Those are the relevant guidelines that have

22   been adopted in this case.

23        I believe there are no counts to be dismissed.  Let me see

24   if there are any other motions to be taken up in the case at

25   this time.

1        Ms. Smith?

2        MS. SMITH:  None, Your Honor.

3        THE COURT:  Mr. Lyons, any motions?

4        MR. LYONS:  No, Your Honor.

5        THE COURT:  All right.  If not, we will proceed with

6   allocution.

7        I will note for the record I have reviewed the sentencing

8   memorandum filed by both the defendant and the United States in

9   the case, but if there is specific comments you wish the Court

10  to make on any of those matters outlined in the memoranda that

11  have been filed, you can call that to my attention, I'll

12  certainly do that.

13       Mr. Lyons.

14       MR. LYONS:  Please the Court, Your Honor.  Most of what I

15  wanted to say is, in fact, in the memorandum.  I think we have

16  acknowledged to the Court the serious nature of the offense.

17  The Court sat through the trial testimony in this case so it

18  does not need much reminding of what the testimony was.  It's

19  clear based on the evidence that the jury found that

20  Mr. McDaniels did misrepresent his assets as well as his

21  liabilities.

22       And as to Count 3, that he used someone else's name for

23  purposes of trying to forestall payment on those loans.  So we

24  acknowledge the seriousness of the offense.

25       I have talked a little bit about some of what I believe to

1   be the mitigating factors, and I think they are pretty

2   important here.  The defendant here has built a life for

3   himself that actually makes sense.  He has supported himself,

4   supported his family.  He has shown entrepreneurial initiative

5   in terms of obtaining properties that he was able to purchase

6   and get rent from.  So he's able to support himself and not be

7   a drag on society.

8      He has shown initiative in terms of getting his education.

9   He went to EKU for a period of time until he decided he was

10   going to join the Navy.  I think it's to his benefit that he

11   did in fact join the armed services and served in the armed

12   services in 2012.

13      The other positive things I think Mr. McDaniels has going

14   for him is his lack of criminal history.  He's never been in

15   any trouble whatsoever before.  So I don't think he presents

16   much a danger, other than the types of conduct that were at

17   issue here today.

18      He has no alcohol or drug abuse problems, which is rare,

19   frankly, in these settings.  So that also I think somewhat

20   mitigates the sentence to be imposed.

21      I know that the Court will want to impose some sentence in

22   connection with Counts 1 and 2 that is distinct from Count 3.

23   Normally, the Court would suggest at times you would start in

24   the middle of the guidelines and determine which way to go

25   based on what you believe to be the factors that are

1    aggravating and mitigating, and I understand that.

2        I think the mitigating factors probably offset some of the

3    flavor that surrounds the 404(b) evidence that was introduced

4    at trial.   I recognize that evidence indicates sort of a

5    pattern of activity that would certainly be troubling to the

6    Court in light of his conviction on the underlying charges, but

7    it seems to me that the day will come where that conduct will

8    be properly adjudicated before the Court.

9        And so I do not think it is -- it's not deemed to be

10   relevant conduct here, although clearly it kind of flavors the

11   disposition of this case, at least in my opinion.

12       You know, the defendant has a stable relationship.  He has

13   a one-year-old son, Vonnie McDaniels Junior.  I feel like

14   Vonnie made some poor judgments, both in his decision to go to

15   trial, but that's his right; and he made some poor judgments

16   during a period of time with respect to these loans.  But it's

17   a fairly narrow band of time compared to the remainder of his

18   life where he has done mostly positive things.

19       He recognizes that the Court has no leeway as it relates

20   to Count 3.  And despite my efforts to suggest that he might

21   want to not proceed to trial, he did so, and so he stands here

22   today with the consequences that the Court is going to impose.

23       With respect to supervised release, I don't have a lot to

24   say, other than I'm going to leave it to the Court's discretion

25   obviously to determine what the appropriate supervised release

1    period is.

2         With respect to the fine, Your Honor, I think this is a

3    matter that Mr. McCaffrey brought up in his sentencing

4    memorandum and I didn't really address much, frankly.  He is

5    indigent.  And normally I would ask the Court not to impose a

6    fine in a case where the defendant is indigent as CJA counsel.

7    I do recognize he has assets and the PSR certainly indicates

8    that he has the ability to pay a fine.  I would simply note to

9    the Court that most of those assets are nonliquid assets, real

10   property that is not easily liquidated for the purpose of

11   paying a fine.

12        I understand that the Court will probably impose a fine,

13   and I would ask the Court to keep that at the low end of the

14   guideline range if the Court would deem that appropriate.

15        I think that's all I have to say, Your Honor.

16        THE COURT:  All right.  Thank you, Mr. Lyons.

17        Mr. McDaniels, would you like to add anything to what

18   Mr. Lyons has said on your behalf?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  All right.  Yes, sir.

21        THE DEFENDANT:  I just want to keep it short.  This is

22   pretty embarrassing.  As Mr. Lyons stated, I made some poor

23   choices.  And even throughout this, I'm still appreciative that

24   Kentucky Bank gave me a shot.  And I would like to thank

25   Mr. Lyons for representing me.  That's all I have to say.

1          THE COURT:  All right.  Thank you.

2      Ms. Smith.

3          MS. SMITH:  Thank you, Your Honor.

4          THE COURT:  Ms. Smith, I suppose I need to confirm before

5      you start that there is not a claim for restitution in the

6      case; is that accurate?

7          MS. SMITH:  That is accurate, Your Honor.

8          THE COURT:  So there is no need to set a hearing at some

9      point later?

10         MS. SMITH:  Correct.

11         THE COURT:  Okay.

12         MS. SMITH:  Your Honor, the United States' position is

13     clearly set out in our sentencing memo.  You know, the issue to

14     decide is really where in the zero to six months guideline

15     range for the bank fraud counts this Court should fall.

16         And there are a lot of aggravating factors to push the

17     Court to the higher end in that range, particularly the conduct

18     itself, and the need for a sentence to reflect the seriousness

19     of it, to deter the specific defendant and to deter others from

20     what some might just discount as lying to bank.

21         But this is serious crime, particularly when accompanied

22     by aggravated identity theft, and the sentence needs to reflect

23     that.

24         For a fraud case, we're starting at a relatively low

25     guideline number, a sentence of 27 to 30 months would be

1    sufficient but not greater than necessary to meet the aims.  In

2    addition the supervised release, and a fine I think at the high

3    end of the guideline range is more than appropriate here.  The

4    Court can consider not only the defendant's current financial

5    circumstance, which suggests he can pay a fine, but also his

6    future earning potential, which given his positive attributes,

7    suggests he could pay a fine.

8         THE COURT:  The high end of his guideline range is

9    $2 million.

10        MS. SMITH:  The guideline of 9,500.  I think the statutory

11   max is 2 million, but the guideline range fine just goes up to

12   9,500.

13        THE COURT:  All right.

14        MS. SMITH:  Thank you, Your Honor.

15        THE COURT:  All right.  Thank you.

16        I do have one question, I'll ask both counsel, if you

17   would like to respond, and it relates to the 404(b) evidence

18   that's been referenced.  I am not inclined to consider that in

19   connection with the sentence if there is a likelihood of

20   further prosecution on that issue, simply because the defendant

21   will receive criminal history points for this conviction.

22        If he has a later charge, and let's assume there is a

23   conviction, if I consider that as -- essentially as relevant

24   conduct or part of history here, then he would get criminal

25   history points.  And he would also perhaps be prosecuted for

1    that matter separately and his guideline range would be higher.

2    So I do have concerns about that even being considered here.

3          So if the parties would like to address that issue,

4    Ms. Smith, I'll begin with you.

5          MS. SMITH:   I think that's correct, Your Honor.   I think

6    that's why in the presentence report it's cabined as not

7    relevant conduct, but still a fact that he mounted in the

8    course of the trial.   But I think just considering the conduct

9    for which he's being sentenced here, the recommendation of the

10   United States would be, you know, three to six months on the

11   bank fraud itself in addition to the two year mandatory term.

12         THE COURT:   All right.

13         Mr. Lyons, I think I understand your position, but I'll

14   let you state it.

15         MR. LYONS:   Just one comment, Your Honor.   It's been

16   consistent since prior to trial, the United States Attorney's

17   Office has told me that they are going to prosecute

18   Mr. McDaniels on these other loans.

19         Mr. McCaffrey and I had had a phone call when the PSR came

20   out in which he indicated that the only thing he was waiting on

21   was some records in order to finalize his approach with respect

22   to the grand jury on those charges.   So I think it's virtually

23   assured.   And so therefore I would ask the Court for the

24   reasons stated that you not consider that conduct in connection

25   with the sentence.

1      THE COURT:  I think that's a fair approach to take in

2  light of possibility of prosecution.  We don't know what a

3  grand jury might do.  But quite frankly, the three charges

4  before the Court are the focus of this matter.

5      I do begin from the properly calculated guideline range in

6  determining what would be an appropriate punishment.  And the

7  guidelines, I pointed this out in several matters recently, of

8  course many times it's overlooked, but especially in what I

9  would consider to be more of a white collar offense, where we

10  do have a defendant that does have earning capacity and he does

11  have some resources, 5E1.2 does indicate that the fine, taken

12  together with any other punishment, which would include any

13  term of incarceration, should be sufficiently punitive to meet

14  the factors of 3553.  Of course, one of those is deterrence.

15  There are several others that certainly are considered.  But

16  the Court does consider a fine in many cases.

17      We sometimes deal with so many gun and drug cases, where

18  we have defendants with extensive criminal history and not able

19  to pay a fine, either now or likely to pay a fine in the

20  future, sometimes we overlook those issues in those cases.

21      But nevertheless, the fine should be appropriate in

22  connection with the conduct in a particular matter.

23      In this case, we do not have a bank that sustained loss,

24  which makes this case a little bit unusual.  Because many times

25  in this type of case, we're dealing with a bank or another

1   institution that does sustain significant losses.

2       But in this case we have, of course, two counts of bank

3   fraud plus the one count of aggravated identity theft that does

4   have a mandatory minimum term of incarceration.

5       So the Court looks at the combined sentence, the sentence

6   that will be imposed in the case, to see whether it is

7   sufficient to meet all the factors of 3553, if it's greater

8   than necessary, if it's less.  In this case, the Court can't go

9   too far below that based on the fact that 24 months is

10  mandatory based on the statute.

11      But I do consider all of the factors of 3553 in

12  determining the penalty, particularly for Counts 1 and 2.  And

13  in this case, there are both mitigating as well as aggravating

14  factors that do go into that analysis, they have been pointed

15  out in the memos, and I do appreciate the memos that have been

16  filed in the case as well as the arguments that have been made.

17      And counsel is correct, I generally do begin, in most

18  cases, in the middle of the guideline range because that does

19  allow me to consider both aggravating and mitigating factors if

20  it does not appear that the term of incarceration should be

21  outside the guideline range.

22      So here we're dealing with zero to six months.  The

23  defendant, as counsel indicates, as is his right, proceeded to

24  trial on these issues.  But the evidence was very clear at

25  trial that he had committed all three counts for which he was

1   charged, including the aggravated identity theft count.   And

2   the Court resolved the primary issue relating to that count

3   pretrial, and that was whether the defendant actually used a

4   means of identification of another.   The case law does appear

5   to be relatively straightforward and clear on that issue.

6       But nonetheless, the defendant did proceed to trial,

7   presented his arguments at trial.   Counsel did an excellent job

8   in presenting this case on behalf of the defendant.   The

9   government did a good job as well, an excellent job in

10  prosecuting the case.

11      On balance, while I do consider both the aggravating and

12  mitigating factors in the context of 3553, I consider the

13  seriousness of the offense, the need to provide just

14  punishment, promote respect for the law and provide deterrence.

15  That may be the primary issue here, and that is if we only look

16  at Counts 1 and 2 standing alone, would a term of incarceration

17  within that guideline range be sufficient to provide

18  deterrence.   I think the answer is probably no.

19      But taken together with the penalty for Count 3, then I do

20  believe a sentence in the middle of the range would be an

21  appropriate penalty for a term of incarceration, three months.

22  Zero to six is the range.   I think that based on the

23  seriousness of the offense itself, to go below that would not

24  be appropriate.

25      I do not feel that this defendant presents a danger to the

1   public.  He may be able to engage in this type of conduct in

2   the future, but with this conviction, that may limit his

3   ability certainly to make similar representations to banks or

4   financial institutions.

5       I do consider the kinds of sentences that are certainly

6   available, and I consider all the policy statements that are

7   outlined in the guidelines.  I've considered all of those in 5H

8   as well as K that the parties haven't raised.  I don't find any

9   here that are appropriate.

10      I do understand the defendant has some family obligations,

11  I certainly do take that into account in making this

12  determination.  And I consider the issue of unwarranted

13  sentencing disparities.

14      So when I consider all those factors together, while

15  arguments have been made both for a higher sentence for

16  Counts 1 and 2 and for a lower sentence, I believe that a

17  middle -- sentence in the middle of the guideline range would

18  be appropriate.

19      I then also look at -- middle of the range being middle of

20  the range for Counts 1 and 2 with a consecutive term of

21  24 months for Count 3.  So it will produce a total term of

22  27 months for the term of incarceration.  I believe that would

23  provide sufficient deterrence, both general as well as specific

24  deterrence.

25      And then also considering the issue of supervision in the

1    case, I'm going to impose a three-year term of supervision on

2    the first two counts with one year on the third count.  I do

3    believe that would be appropriate to allow the probation office

4    to provide proper supervision for the defendant, to be

5    available for any rehabilitative needs that the defendant may

6    have, but also properly supervise him during that period of

7    time.

8        With respect to the issue of the fine, considering all the

9    information that is available, and I certainly do understand

10   the defendant had appointed counsel in the case, but there's

11   also a significant amount of assets reflected.  And they may

12   not be liquid assets now, but there are a number of assets.

13   And I do believe if the defendant is unable to pay the fine,

14   which is more toward the middle of the range as described by

15   counsel for the United States -- I'm not going to go to the top

16   end -- I'm going to go to $4,000.  I do believe over a period

17   of three years that that would not create an undue hardship for

18   the defendant or for his family, but it would be sufficiently

19   punitive under the language that is outlined in 5E1.2.  And it

20   does take into account certainly all of those factors, the

21   defendant's ability to pay, the resources and assets that are

22   available to him, as well as his potential earning capacity,

23   and all the other factors listed in that particular section of

24   the guidelines.

25       I'll announce the sentence at this time.

1          It will be the sentence of the Court pursuant to the

2     Sentencing Reform Act of 1984, as modified by the decisions in

3     *Booker* and *Fanfan*, I do find the following sentence would be

4     sufficient but not great than necessary to meet all the

5     purposes of Title 18, Section 3553(a):

6          Therefore, it will be the judgment of the Court that the

7     defendant, Vonnie J. McDaniels, will be committed to the

8     custody of the Bureau of Prisons for a term of three months on

9     Counts 1 and 2 to run concurrently, and 24 months on Count 3,

10    to run consecutively to Counts 1 and 2, to produce a total term

11    of incarceration of 27 months.

12         Upon release, he will be placed upon supervision for a

13    term of three years on each of Counts 1 and 2, and one year on

14    Count 3, to run concurrently.  That will produce a total term

15    of supervision of three years.

16         Within 72 hours of release from the Bureau of Prisons, he

17    must report in person to the probation office in the district

18    in which he is released.  And while on supervision, he may not

19    commit another federal, state or local crime.  He must comply

20    with the mandatory and the standard conditions adopted by the

21    Court and that will be set forth in the judgment and commitment

22    order.

23         However, the drug testing condition that's ordinarily

24    required by Title 18 of the United States Code, Sections

25    3553(a)(5) and 3563(a)(5) will be suspended based upon my

1    determination that Mr. McDaniels does not pose a risk of

2    substance abuse in the future.

3         I will, however, impose the following special conditions:

4         He may not use alcohol in excess.

5         He must submit his person, as well as any offices,

6    properties, homes, residences, vehicles, storage units, papers,

7    computers or other electronic communications or data storage

8    devices or media to a search conducted by the United States

9    Probation Officer.  The failure to submit to a search would be

10   grounds for revocation of release, and he must warn all

11   occupants that his premises would be subject to a search

12   according to this condition.

13        I do believe that the search condition is necessary to

14   allow the probation office to review records and other

15   materials to ensure that the defendant is not engaging in

16   similar conduct that may result in violations or perhaps

17   further prosecutions.

18        He will be required to provide the probation office with

19   access to any requested financial information, and he may not

20   incur any new credit charges or open additional lines of credit

21   without the approval of the probation office unless he is in

22   compliance with an installment payment schedule.

23        And based upon the financial information and the

24   defendant's ability to pay a fine, I have determined that a

25   $4,000 fine would be appropriate in this case.  It will be due

1   immediately, but if the defendant is unable to pay this

2   immediately, he is to pay it in accordance with the Bureau of

3   Prisons' Inmate Financial Responsibility Program.

4       And the Court will also impose a special assessment of

5   $300, that also will be due immediately.

6       I believe there is a forfeiture allegation in the case,

7   but I believe the United States is not seeking forfeiture at

8   this time; is that correct?

9       MS. SMITH:  Correct.

10       THE COURT:  All right.  And I will set a report date.  I'm

11   going to give Mr. McDaniels a little bit of extra time to

12   report.  I'll set a report date of Monday, January 3rd, to the

13   institution designated by the Bureau of Prisons prior to

14   3:00 p.m. on that date.  That will be reflected in the judgment

15   to be entered in the case.

16       I have an aversion to setting report dates around the

17   holidays, Counsel, so --

18       MR. LYONS:  Thank you, Your Honor.

19       THE DEFENDANT:  Thank you, Your Honor.

20       THE COURT:  That will be the judgment of the Court.

21       In just a moment, I will ask the clerk to advise

22   Mr. McDaniels of his appellate rights, but first I'll ask the

23   attorneys to state any objections they may have to the sentence

24   that has been announced, that will include conditions of

25   supervision.

1          Second would be any objections under *United States versus*

2    *Bostic*.   As the attorneys know, any objections not previously

3    stated should be stated at this time so they may be addressed

4    by the Court.

5          And then finally, if either party would like the Court to

6    make additional findings to support any of the matters that

7    have been announced, I'll certainly do so if requested.

8          Ms. Smith, I'll begin with you on behalf of the

9    government.

10          MS. SMITH:  No objections, Your Honor, and no request for

11    further findings.

12          THE COURT:  All right.   Thank you.

13          Mr. Lyons.

14          MR. LYONS:  Your Honor, no objections to the sentence as

15    stated.   No objections under *Bostic*, and no request for further

16    findings.   Just simply noting our previous objection to the

17    Count 3 issue.

18          THE COURT:  They are preserved for the record.

19          Madam Clerk, if you could please advise Mr. McDaniels of

20    his appellate rights.

21          THE CLERK:  Yes, Your Honor.

22          (The form entitled "Court's Advice of Right to Appeal" was

23    read aloud in open court by the clerk.)

24          THE COURT:  Thank you.

25          MR. LYONS:  May I approach, Judge?

1        THE COURT:  Yes, sir.  Thank you.

2        Mr. McDaniels, you're about to be shown what was just read

3  to you.  If you could please take a moment to review your

4  appellate rights with counsel, after you have assured yourself

5  you understand those rights, if you could please sign that

6  original document and there is a copy can also keep for your

7  records.

8        Thank you, Mr. Lyons.

9        MR. LYONS:  Yes, sir.

10       THE COURT:  Are there any other issues we need to take up

11  in the case at this time?

12       MS. SMITH:  No, Your Honor.

13       THE COURT:  Thank you.

14       Mr. Lyons, anything else on behalf of Mr. McDaniels?

15       MR. LYONS:  No, Your Honor.  I need to thank you for the

16  report date on behalf of my client, I think he appreciates

17  that.

18       THE COURT:  Yes, sir.  Good luck.

19       We will be in recess until 11:00 a.m. this morning.

20       (Proceedings concluded at 10:33 a.m.)

21                  C E R T I F I C A T E

             I, Linda S. Mullen, RDR, CRR, do hereby certify that

22  the foregoing is a correct transcript from the record of

    proceedings in this above-entitled matter.

23  /s/Linda S. Mullen          December 17, 2021

    Linda S. Mullen, RDR, CRR    Date of Certification

24  Official Court Reporter

25